## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **RICHARD POUPART,** | : | **CIVIL CASE NUMBER** |
| *Plaintiff,* | : | |
| | : | **3:15-cv-00538 (VLB)** |
| **v.** | : | |
| | : | **FEBRUARY 22, 2018** |
| **UNITED STATES,** | : | |
| *Defendant.* | : | |

## MEMORANDUM OF DECISION DENYING PETITION FOR RELIEF UNDER 28 U.S.C. § 2255 [DKT. 1]

Petitioner Richard Poupart ("Poupart" or "Petitioner") brings this *pro se* petition for habeas relief under 28 U.S.C. § 2255, asserting six ineffective assistance of counsel claims against his counsel who represented him through preparation for trial, his guilty plea shortly before trial, and sentencing. [Dkt. 1.] For the foregoing reasons, this Motion to Vacate, Set Aside, or Correct Sentence is DENIED.

## Background

On July 22, 2010, the Government filed a sealed complaint and affidavit in support of an application for an arrest warrant for Mr. Poupart, detailing an investigation into violations of 18 U.S.C. § 2252 concerning material involving the sexual exploitation of minors. *United States v. Poupart*, 3:11-cr-00116 ("*Poupart*"), Dkt. 4. On August 6, 2010, Mr. Poupart appeared before Magistrate Judge Margolis, and Judge Margolis ordered Mr. Poupart detained pending a formal detention hearing on August 23. *Id.*, Dkt. 7. The day of his initial appearance, the Court appointed the Federal Public Defender's Office to represent Mr. Poupart. *Id.*, Dkt. 13. Assistant Federal Defender Sarah Merriam

represented Mr. Poupart at his August 23, 2010 detention hearing, where the Court ordered Mr. Poupart detained and denied his motion for bond. *Id.*, Dkts. 20, 22. Assistant Federal Defender Merriam moved to withdraw her representation on October 1, 2010, citing "substantial and irreconcilable differences" and stating Mr. Poupart "has stated on several occasions that he does not trust [Attorney Merriam] to provide sound legal advice, and that he has no confidence in the Office of the Federal Defender to act in his best interest." *Id.*, Dkt. 31. Magistrate Judge Margolis granted the motion to withdraw and ordered the appointment of substitute counsel. *Id.*, Dkt. 32. Attorney Jodi Gagne appeared as CJA counsel on October 7, 2010. *Id.* at Dkt. 33.

On October 25, 2010, Mr. Poupart moved for a new attorney, stating he wished to be represented by Attorney Norman Pattis because he believed Attorney Pattis was more experienced with computer-related cases. *Id.* at Dkt. 34. In the motion filed on Mr. Poupart's behalf, Attorney Gagne stated she explained to Mr. Poupart that she has practiced "criminal law for a number of years and is fully capable to provide him with highly competent legal services." *Id.* Attorney Gagne also explained to Mr. Poupart that "the Court is not obligated to provide him with counsel of his choice." *Id.* Attorney Gagne also noted that while Attorney Pattis expressed willingness to represent Mr. Poupart, he was no longer a member of the CJA Panel. *Id.* Magistrate Judge Margolis denied the motion on October 28, 2010. *Id.* at Dkt. 38. Mr. Poupart did not retain Mr. Pattis or choose to represent himself and thus continued to be represented by Attorney Gagne.

On June 30, 2011, a grand jury returned a two-count indictment charging Mr. Poupart with (1) knowingly transporting and shipping in interstate commerce, by any means including by computer, a visual depiction, the production of which involved the use of a minor engaging in explicit conduct and which visual depiction was of such conduct, in violation of 18 U.S.C. § 2252(A)(1); and (2) knowingly possessing one or more matters, which contained any visual depiction that had been mailed, shipped and transported in interstate commerce, which was produced using materials that were shipped, mailed, or transported in interstate commerce, by any means including by computer, the production of which involved the use of a minor engaging in sexually explicit conduct, and which visual depiction was of such conduct, in violation of 18 U.S.C. § 2252(a)(4)(B). *Id.*, Dkt. 56. At the arraignment on July 19, 2011, Mr. Poupart entered a plea of not guilty. *Id.*, Dkt. 60.

On August 22, 2011, Attorney Gagne moved to appoint Attorney James Filan as additional CJA counsel on behalf of Mr. Poupart, to second-chair the trial. *Id.*, Dkt. 68. The motion described the case as "exceedingly complex" and "high stakes" given the "vast number of pictures found on Mr. Poupart's computer(s) that could be considered child pornography." *Id.* After a status conference, the Court denied the motion without prejudice on September 2, 2011, stating Attorney Gagne could renew her motion if, upon further development of the case, the criteria under CJA Guideline § 230.53.201(a) for appointment of additional counsel in non-capital cases was met. *Id.*, Dkt. 72.

Attorney Gagne filed several motions seeking to exclude evidence. The first was a motion *in limine* to exclude a deposition transcript uncovered at Mr. Poupart's home, in which the victim in a prior sexual assault case against Mr. Poupart described the facts surrounding that sexual assault. *Id.*, Dkt. 74. Attorney Gagne also sought to exclude evidence of the fact that Mr. Poupart was a photographer for an adult website which his sister operated. *Id.* Attorney Gagne also moved to exclude any sexual "toys" uncovered in Mr. Poupart's home. *Id.* Finally, Attorney Gagne sought to exclude evidence of prior bad acts or uncharged crimes committed by Mr. Poupart, including his prior sexual assault convictions. *Id.*, Dkt. 75. On October 31, 2011, after a two and a half hour hearing, District Court Judge Arterton granted in part and denied in part the motion to exclude evidence of Mr. Poupart's prior misconduct, finding the Government could offer evidence of Mr. Poupart's 2009 Connecticut state conviction involving sexual assault in the fourth degree. *Id.*, Dkts. 92, 132. Judge Arterton denied the other motions *in limine*. *Id.*, Dkt. 92.

On November 3, 2011, Attorney Gagne moved to incur expenses to retain a computer forensic investigator to help prepare the case for trial. *Id.*, Dkt. 93. The expert would help determine "how [the images which are the subject of the indictment] got onto the computer, who put those images on the computer, when those images were put on the computer, the process by which the government obtained those images off the computer, the chain of custody of the computer and its images, and, finally, testimony at trial as to all of the above." *Id.* The motion also explained that this would be the second computer expert retained in

4

this case, as Attorney Gagne "previously hired a computer expert, pre-indictment, to consult on the case." *Id.* Attorney Gagne explained that the prior expert was "unable, for a number of reasons, to continue on this case now that trial is imminent." *Id.* Judge Arterton granted the motion and approved expenses up to $7,500. *Id.*, 94.

On December 22, 2011, Attorney Gagne again moved to appoint Attorney James Filan to serve as co-counsel at trial. *Id.*, Dkt. 103. The following day, the Court granted the motion in light of the increased complexity and demands of the case as the trial date approached. *Id.*, Dkt. 104.

On January 18, 2012, Attorneys Gagne and Filan moved to incur expenses to retain additional experts for trial, including a dermatologist to determine whether identifying features in a photo on Mr. Poupart's computer could belong to his minor niece, a private investigator to obtain background information on witnesses the Government identified who would testify against Mr. Poupart, and to continue using the services of the previously retained computer forensic expert. *Id.*, Dkts. 112, 113, 115. All three motions were granted on February 9, 2012. *Id.*, Dkts. 119, 120, 121.

On March 26, 2012, Attorneys Gagne and Filan moved *in limine* to exclude evidence of Mr. Poupart's criminal record for impeachment purposes, as well as for the non-impeachment purposes for which that evidence was excluded in the ruling on their prior motion *in limine*. *Id.*, Dkt. 132. However, on May 25, 2012, before Judge Arterton had an opportunity to rule on that motion, Mr. Poupart entered into a plea agreement with the Government. *Id.*, Dkt. 142. On May 25,

2012, at a change of plea hearing, Mr. Poupart pled guilty to count two of the indictment.  *Id.*, Dkt. 145.  On August 5, 2012, Attorney Filan moved to withdraw his appearance, as Mr. Poupart's guilty plea rendered a second attorney unnecessary.  *Id.*, Dkt. 161.  The motion was granted.  *Id.*, 162.

On August 7, 2012, Attorney Gagne moved to withdraw her appearance as well, stating she and Mr. Poupart "do not see eye to eye on the direction in which this case should be heading."  *Id.,* Dkt. 163.  Without violating the attorney-client privilege, Attorney Gagne stated that she "refused to take an action requested by Mr. Poupart," and "Mr. Poupart expressed his desire for a different attorney."  *Id.* The Court held a hearing on the motion to withdraw on August 21, 2012, and took the motion under advisement.  *Id.*, Dkt. 166.  The Court also ordered Mr. Poupart to file a motion to withdraw his guilty plea, if so desired, by August 31, 2012.  *Id.* On August 27, 2012, Attorney Paul Thomas appeared as stand-by counsel to aid Mr. Poupart in filing his motion to withdraw his guilty plea.  *Id.* at Dkt. 167.

On September 5, 2012, Mr. Poupart filed a motion to withdraw his guilty plea, aided by Attorney Thomas.  *Id.*, Dkt. 172.  In his motion, Mr. Poupart asserted Attorneys Gagne and Filan intimidated him into accepting a plea agreement and ineffectively assisted him.  *Id.*  The Court denied the motion to withdraw guilty plea on October 18, 2012.  *Id.*, Dkt. 178.  At a November 6, 2012 hearing on Attorney Gagne's motion to withdraw counsel, the Court denied Attorney Gagne's motion and granted Attorney Thomas's oral motion to withdraw.  *Id.*, 181.  On November 14, 2012, upon reconsideration, the Court

granted Attorney Gagne's motion to withdraw and appointed Attorney C. Thomas Furniss as substitute CJA counsel. *Id.*, Dkt. 182.

Attorney Furniss represented Mr. Poupart for his sentencing, which included filing a sentencing memorandum and representing Mr. Poupart at the sentencing proceeding. *Id.*, Dkts. 187, 193. On February 7, 2013, Judge Arterton sentenced Mr. Poupart to 240 months imprisonment and a life term of supervised release. *Id.*, Dkts. 193, 200.

On February 19, 2013, Mr. Poupart entered a notice of appeal of the final judgment. *Id.*, Dkt. 197. Mr. Poupart wrote a letter to Judge Arterton requesting substitute counsel to represent him on his appeal, as Attorney Furniss "has made it abundantly clear that he does not wish to handle my appeal." *Id.*, Dkt. 209. Mr. Poupart asserted Attorney Furniss displayed "incompetence handling the sentencing based on his refusal to handle my case the way I asked and lack of discussion prior to filing the sentencing memorandum," and as a result Mr. Poupart had "no desire to have him handle my appeal." *Id.* The Court denied the motion in light of the Second Circuit's appointment of Attorney Gerzog to represent him on his appeal. *Id.*, Dkt. 210.

On June 3, 2014, the Second Circuit affirmed the Judgment of the District Court, finding (i) the District Court did not violate Mr. Poupart's Sixth Amendment rights by allowing him to file a *pro se* motion to withdraw his guilty plea without first conducting a proceeding pursuant to *Faretta v. California*, 422 U.S. 806 (1975); and (ii) the sentence imposed was procedurally and substantively

reasonable, as the District Court explicitly considered the 18 U.S.C. 3553(a) factors in determining his sentence. *Id.*, Dkt. 215.

Thereafter, Mr. Poupart timely filed this habeas petition before the Court. 18 U.S.C. § 2255(f) (setting a one-year limitations period from the date the judgment of conviction becomes final); [Dkt. 1 (Motion to Vacate filed April 10, 2015).]

<u>Legal Standard</u>

Section 2255 enables a prisoner in federal custody to petition a federal court to vacate, set aside, or correct the sentence. 28 U.S.C. § 2255(a). Relief under Section 2255 is generally available to rectify three irregularities, namely "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in complete miscarriage of justice." *Graziano v. United States*, 83 F.3d 587, 590 (2d Cir. 1996) (internal quotation marks and citation omitted). Section 2255 provides that a district court should grant a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

Claims for ineffective assistance of counsel are analyzed under the two part test established in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail, a movant must both allege facts demonstrating that "counsel's representation fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 687–88, 694. As to the first

showing, a movant must demonstrate that counsel's performance "amounted to incompetence under 'prevailing professional norms'" rather than demonstrating that the performance "deviated from best practices or most common custom." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Strickland*, 466 U.S. at 690). As to the second showing, a movant must demonstrate "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

<u>Analysis</u>

Mr. Poupart brings six ineffective assistance of counsel claims arising out of his counsel's actions during trial preparation, his change of plea, and sentencing, some of which were already addressed in Judge Arterton's Order Denying Motion to Withdraw Guilty Plea. The Court addresses each claim in turn.

I.   <u>Failure to Object to Discovery</u>

Mr. Poupart first asserts his counsel was ineffective for failing to challenge the admissibility of videotaped recordings of forensic interviews of two minor victims because there was a break in the chain of custody of those recordings. Because the recordings provided the basis for the search warrant of Mr. Poupart's residence, he also asserts his counsel should have challenged all evidence seized pursuant to that warrant. The Government responds that the recordings were not offered as evidence at trial. In addition, the Government asserts Shelton Police Detective Trabka was present at the recorded interviews, and his affidavit in support of the search warrant would have provided probable cause for the warrant even without the recordings themselves. Taking into consideration the totality of the circumstances, including that Detective Trabka

was present at the time the recordings were made and described the interviews in his affidavit, the decision not to challenge this evidence falls within the range of strategic decisions competent counsel would make and thus counsel's decision not to do so did not fall below the performance of competent counsel. *Henry v. Poole,* 409 F.3d 48, 52 (2d Cir. 2005).

Plaintiff raised the same argument in his motion to withdraw his guilty plea. *Poupart*, Dkt. 172. Judge Arterton held that:

> Even if the Court assumes for the purposes of this motion that defense counsel's failure to move to suppress this evidence was "outside the range of professionally competent assistance," *Strickland*, 466 U.S. at 690 (which the Court does not believe on the basis of this record), and that the videotape was inadmissible, Poupart could not establish that he was prejudiced by his attorney's refusal to challenge the admissibility of this evidence. Detective Benjamin Trabka of the Shelton Police Department and Clinician Monica Vidro of Yale both observed the victims' interview at the Yale Sex Abuse Clinic when it was conducted. Either of these two individuals, in addition to Theresa Montelli, the clinician who conducted the interviews, and the victims themselves, could have provided first-hand testimony at trial regarding the interview. Similarly, because Detective Trabka was present during the interviews, his affidavit in support of the search warrant for Poupart's home would have provided ample probable cause for the warrant based on his observations alone, and any defect in the chain of custody of the videotape would not have affected the validity of the warrant. Thus, there is nothing to suggest that without the videotape Poupart would have been in a stronger position at trial, or that his attorneys' failure to move to suppress the tape left him no choice but to plead guilty. Therefore, Defendant cannot establish prejudice under the second prong of the *Strickland* test on these grounds.

*Poupart*, Dkt. 178 at 13-14. Mr. Poupart provides no additional evidence here beyond what was available to Judge Arterton, and offers no basis for this Court to diverge from Judge Arterton's ruling. *See Sanders v. United States*, 373 U.S. 1, 9, 17 (1963) (finding that, "[a]mong the matters which may be considered, and

even given controlling weight," by a court addressing a successive motion alleging ineffective assistance of counsel, "are . . . a prior refusal to discharge on a like application.")

Further, review of the record confirms Judge Arterton's findings. In the warrant application, Officer Trabka included a sworn statement describing the recorded victim interviews which he monitored. *Poupart*, Dkt. 173-1 at 10. The affidavit also confirms that Yale Sex Abuse Clinician Monica Vidro monitored the recorded victim interviews and that Clinician Theresa Montelli conducted the interviews. *Id.* Mr. Poupart cannot establish any prejudice suffered by the failure to challenge the videotape, as its contents could have been described by witnesses at trial and were described in Officer Trabka's affidavit in support of the search warrant. Mr. Poupart's first ineffective assistance of counsel claim is DENIED.

## II.  Failure to Engage a Forensic Expert

Mr. Poupart next asserts his counsel should have engaged a computer forensic expert to testify regarding when the photos which underlie the indictment were put on his computer. The Government points out that Mr. Poupart's counsel engaged two computer forensic experts, one before the indictment and one to aid in trial preparations and testify at the anticipated trial.

Mr. Poupart has cited no evidence upon which the Court could conclude that the computer forensic expert retained for trial could not have testified as to the dates the photos were added to his computer. Even if the retained expert could not have given Mr. Poupart's desired testimony, Mr. Poupart has offered no

evidence that any other forensic expert could have done so.  Courts routinely hold that where "allegations with regard to alleged counsel's errors in pre-trial preparation and investigation and trial advocacy are 'vague, conclusory, and unsupported by citation to the record, any affidavit, or any other source,'" ineffective assistance of counsel claims cannot be established.  *Vasquez v. United States,* Nos. 96 CIV. 2104 (PKL), 91 CR. 153(PKL), 1997 WL 148812, at *12 (S.D.N.Y. Mar. 28, 1997); *see also Davison v. United States,* No. 97 CR. 490 (LAP), 00 CIV. 3064 (LAP), 2001 WL 883122, at *8 (S.D.N.Y. Aug. 3, 2001).  Absent any facts upon which the Court could conclude that the retained experts could not have offered the testimony Mr. Poupart contemplates, he has not asserted that the failure to retain an additional computer forensic expert fell below an objective standard of reasonableness or caused Mr. Poupart prejudice.  *Strickland,* 466 U.S. at 687–88, 694.  Mr. Poupart's second ineffective assistance of counsel claim is DENIED.

### III.  Failure to Explain Intent

Mr. Poupart next claims that his counsel failed to explain the intent element of the crime to which he pled guilty: the knowing possession of child pornography.  The Government responds that Mr. Poupart was advised of the elements of the offense in the plea agreement and at the change of plea hearing. In addition, the Government notes that at his change of plea hearing, Mr. Poupart affirmatively stated that he knowingly engaged in the offense conduct.

"A reading of the indictment to the defendant coupled with his admission of the acts described in it is a sufficient factual basis for a guilty plea."  *Fama v.*

*United States*, 901 F.2d 1175, 1177 (2d Cir. 1990) (citing *Montgomery v. United States,* 853 F.2d 83, 85 (2d Cir. 1988)). A defendant's "statements made under oath during his plea allocution belie his protestation . . . that his plea was unknowing or involuntary." *Rosenfield v. United States*, 972 F. Supp. 137, 142 (E.D.N.Y. 1997) (rejecting an assertion that defendant's counsel ineffectively assisted him by failing to explain the intent element of the offense where the defendant swore that he bore the requisite intent during his plea allocution).

At the change of plea hearing, the Court noted that the elements of possession of child pornography were set out in the plea agreement and asked Assistant U.S. Attorney King to summarize them. *Poupart*, Dkt. 170 at 37. Attorney King obliged:

> The government would be required to prove four essential elements, first, that the defendant knowingly possessed a visual depiction, that is, an image or a data convertible to an image; that the visual depiction had moved -- had been transported or mailed or shipped in interstate or foreign commerce or had been produced using materials that had been transported or shipped or mailed in interstate commerce. So, the visual depiction either had to move across state lines or international lines or the material in which the visual depiction was stored had to move like that. Third, that the production of the visual image involved the use of a minor engaged in sexually explicit conduct and shows that minor engaged in that conduct. And fourth, that the defendant knew that the picture involved the use of a minor engaged in that sexually explicit conduct and showed that minor in that conduct.

*Id.* at 37-38. The Court then asked Mr. Poupart to "tell me in your own words what you understand you are charged with." *Id.* at 38. Mr. Poupart replied, "possession of child pornography." *Id.* The Court then responded, "[a]nd the government would have to prove that you knew that you possessed it." *Id.* Mr. Poupart replied, "Yes." *Id.* The Court responded, "[a]nd it was a visual depiction,

13

it was a visual depiction of a minor engaged in sexually explicit conduct, that you knew that that's what it depicted, and that the image or the materials travelled in interstate commerce. That's what gives it federal jurisdiction." *Id.* at 38-39. Mr. Poupart again replied, "Yes." *Id.* at 39. The Court then asked Mr. Poupart to "tell me then in your own words what it is that you did that shows that you are guilty of this offense that you are offering to plead guilty to." *Id.* at 39. Mr. Poupart responded, "I know that I had images of child pornography on my computer, I know that I put these images on my computer, I know these images were of a minor engaged in sexual acts, and I know the images were made with materials that were transported in interstate commerce." *Id.* at 39.

Mr. Poupart has offered no evidence that his sworn statement that he knowingly possessed child pornography, and that he put the photographs on his computer, was untrue, or that he did not understand the elements of his offense despite affirmation to the Court that he did understand them. Mr. Poupart's unsupported assertion is insufficient to establish that his counsel ineffectively advised him as to the intent element of his crime, or that any such failure by his counsel caused prejudice in light of Mr. Poupart's dialogue with the Court at his change of plea hearing. *See Rosenfield*, 972 F.2d at 144 (finding that even if defense counsel failed to explain the intent element of the offense, defendant's dialogue with the court at his plea allocution remedied the error). Mr. Poupart's third ineffective assistance of counsel claim is DENIED.

## IV. Intimidation and Coercion

Mr. Poupart next asserts categorically that his counsel used threats and coercion to induce him to plead guilty. The Government responds that Mr. Poupart details no specific instance of coercion or other facts in support of his conclusory claim. The Government also asserts that Mr. Poupart's claim is belied by his statement at his change of plea hearing that his guilty plea was not coerced.

Mr. Poupart raised this argument in his motion to withdraw his guilty plea, which Judge Arterton rejected. Again, Mr. Poupart has offered no additional evidence which would require this Court to reach a result different from Judge Arterton's, and the Court has found no such evidence in its own review of the record.

Mr. Poupart first announced that he was coerced into pleading guilty at the August 21, 2012 hearing on the motion for Attorney Gagne to withdraw prior to sentencing. *Poupart*, Dkt. 171 at 10-11. At that hearing, Mr. Poupart advised the Court that he wished for Attorney Gagne to withdraw because she would not file certain motions on his behalf. Attorney Gagne and stand-by counsel Attorney Thomas both explained that they could not file the requested motions without violating the rule of professional conduct which prohibits filing frivolous motions. The Court asked Mr. Poupart what motions he wanted filed, and he referenced the chain of custody argument regarding the videotaped interviews of minor victims which was discussed previously in this memorandum of decision. *Id.* at 10-11. The Court explained that the motion Mr. Poupart wanted to file would have related

to a trial, but that Mr. Poupart pled guilty. *Id*. at 11. The following exchange then occurred:

> The Defendant: I was forced to plead guilty. I have basically -- it was a problem with Ms. Gagne. I told her I wanted to withdraw my plea because I was forced under duress.
>
> The Court: What do you mean you were forced under duress to plead?
>
> The Defendant: I was told various things which have come to my attention which were not true, and the fact that I was told point-blank that if I went to trial I was getting 25 years, which is wrong, I don't feel that I've had the adequate representation right along.
>
> The Court: Now, you recognize that I, rather unusually, appointed two attorneys for you because the stakes were high, because there was some complexity having to do with --
>
> The Defendant: I had a conflict with Mr. Filan from day one. Me and him never got along.
>
> The Court: You may not have gotten along, but he's certainly a competent defense attorney. Well, I guess what I'm trying to understand is, are you seeking to withdraw your guilty plea?
>
> The Defendant: Yes, I am, your Honor.
>
> The Court: All right, that's a high standard to meet. You are going to need to do it in your own motion. You are going to need to file that motion no later --
>
> The Defendant: I don't know the first thing about writing a motion, your Honor.
>
> The Court: Well, sir, I can't be your attorney.
>
> The Defendant: All I've ever asked for was an attorney that actually worked for me and didn't work for the prosecution.
>
> The Court: Now, you've had three attorneys. Mr. Thomas has offered to come in as your attorney. Do you want Mr. Thomas to represent you?
>
> The Defendant: I would like his help.

Judge Arterton then confirmed with Attorney Thomas that he could assist Mr.

Poupart with filing a motion to withdraw. Judge Arterton then explained to Mr

Poupart what his motion to withdraw his guilty plea would need to address:

> So, where I have found at the hearing by your colloquy and our proceedings then that it was a valid plea, meaning that you did it voluntarily, knowingly, that there was a factual basis and that you were competent, you're going to have to overcome that finding by setting out, not in conclusory terms, but setting out what the hearing on your entry of a guilty plea failed to address and why that was either something beyond your control or something that would show it to be involuntary. I've got to warn you that you will need to work hard on your motion. Okay? And I will need it to be filed by August 31st.

Mr. Poupart's motion to withdraw his guilty plea, filed with Attorney

Thomas' assistance, listed a number of grievances against Attorney Gagne and

Attorney Filan. *Poupart*, Dkt. 172. Some of those grievances did not bear upon

the voluntariness of his plea, including the failure to file certain evidentiary

motions on his behalf and delay in requesting certain discovery. *Id.* at 1-3.

Regarding his change of plea, Mr. Poupart asserted Attorney Filan engaged in

"on-going instances of intimidation," and that his:

> intimidating and often aggressive attitude towards the defendant had an effect on the defendant's ability to clearly evaluate all the factors of the plea agreement. Also on May 25, 2012, Assistant U.S. Attorney Anastasia King gave the defendant less than one hour to consider all the factors in the plea agreement. The defendant believes the strained attorney-client relationship hindered his ability to receive effective counsel prior to, and during the decision making process related to the plea agreement.

*Id.* at 1. Mr. Poupart also stated "Attorney Gagne did not fully and adequately

explain the appeal stipulation in the plea agreement," and as a result, Mr. Poupart

"entered into the plea agreement under the impression that the right to appeal is

present in the agreement." *Id.* at 4. Mr. Poupart asserts Attorney Gagne's failure to explain his right to appeal, along with Mr. Filan's intimidation and the one hour time limit for him to accept the plea agreement, "caused the defendant to enter into an agreement without sound, clear, and effective counsel." *Id.* at 4.

Judge Arterton denied the motion to withdraw guilty plea. As to his argument that Attorney Filan had an "intimidating and often aggressive attitude," Judge Arterton noted that Mr. Poupart failed to present any evidence of threats or coercion by Attorney Filan (or Attorney Gagne) which would contradict his sworn statement that he was not coerced. *Id.* at 5. Judge Arterton noted that during his plea colloquy, Mr. Poupart "confirmed that he had not been coerced into entering his plea:

> The Court: Other than the promises that are in this written agreement, has anyone made any promises to you that have caused you to plead guilty?
>
> The Defendant: No.
>
> The Court: Has anybody threatened you or intimidated you in any way that has caused you to decide to plead guilty?
>
> The Defendant: No.

*Id.* at 5 (citing Dkt. 170 (Plea Transcript) at 31). Likewise, Judge Arterton noted that Mr. Poupart stated in his plea petition that "I have not been threatened or forced in any way to plead guilty at this time or any other times." *Id.* at 5 (citing Dkt. 143 (Plea Petition) at ¶ 21). In addition, Mr. Poupart acknowledged in his plea agreement that he entered into the agreement "without threats, force, intimidation, or coercion of any kind." Poupart, Dkt. 178 at 4 (citing Dkt. 142 (Plea Agreement) at 7). Judge Arterton concluded that Mr. Poupart's "bald statements

18

that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw [a] guilty plea." *Id.* (citing *United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997)).

Judge Arterton also addressed Mr. Poupart's assertion, which was not repeated in the motion currently pending before this Court, that he was only given one hour to accept the plea agreement. *Poupart*, Dkt. 178 at 6. Judge Arterton explained that the plea agreement was the same plea agreement Mr. Poupart had considered and rejected two months earlier, and that at the time it was first considered, Mr. Poupart's attorneys spent several hours consulting with him about it. *Id.* (citing *Poupart*, Dkt. 173-1 (Exhibits A-C to Opposition to Motion to Withdraw Guilty Plea) (records of Attorney Gagne's visit with Mr. Poupart to discuss the plea agreement)). In addition, at his change of plea hearing, Mr. Poupart affirmed that he had sufficient opportunities to discuss his case with his counsel prior to pleading guilty. *Id.* at 6 (citing Dkt. 170 (Plea Transcript) at 8). Judge Arterton found, in light of this evidence, that Mr. Poupart "failed to establish that his guilty plea was involuntary due to any form of coercion or intimidation by his attorneys or by the Government." *Id.* at 6.

Finally, Judge Arterton addressed Mr. Poupart's argument, not repeated in his current motion, that Attorney Gagne failed to "fully and adequately explain the appeal stipulation in the plea agreement." *Id.* at 14. Mr. Poupart explained in his motion to withdraw his guilty plea that:

> What was not made clear prior to the signing of the agreement was whether the defendant has the right to appeal the amount of time received, the charge itself, or both. The defendant at the time of signing of the plea agreement was under the understanding from his

**counsel that both time and the charge could be appealed. This significant misunderstanding has played a major factor in whether or not the defendant would have accepted this plea agreement.**

*Poupart*, Dkt. 172 at 4.

Judge Arterton rejected this argument as well, noting that at his change of plea hearing, the Court explained to Mr. Poupart that "[b]oth sides have reserved all appellate rights, and subject to the terms of your plea agreement, you may be able to appeal your conviction if you believe your guilty plea was somehow unlawful or involuntary or there is some other fundamental defect in the proceeding, including unconstitutionally ineffective assistance of counsel that you didn't waive by your guilty plea. And there's a statutory right to appeal your sentence if you think that sentence is contrary to law." *Poupart*, Dkt. 178 at 16 (citing *Poupart*, Dkt. 170 at 36). When asked if he had any questions regarding his right to appeal, Mr. Poupart said "No." *Id.* at 16 (citing *Poupart*, Dkt. 170 at 36-37). Even if Mr. Poupart's counsel had not clearly explained his right to appeal, he was informed of that right by the Court prior to entering into his guilty plea. *Id.*

The Court has found no basis in the record to come to conclusion different from Judge Arterton's well-reasoned decision. Mr Poupart's statement that he was coerced and intimidated into pleading guilty is not supported by any evidence beyond conclusory allegations, and his "statements made under oath during his plea allocution belie his protestation . . . that his plea was . . . involuntary." *Rosenfield*, 972 F. Supp. at 142 (denying an ineffective assistance of counsel claim because the defendant's sworn statements contradicted his

20

conclusory assertions).  Mr. Poupart's fourth ineffective assistance of counsel claim must be DENIED.

V.    <u>Failure to Advise of Consequences of Sentencing</u>

Mr. Poupart also asserts his counsel "misrepresented sentencing factors" and "misrepresented sentencing consequences both direct and indirect." [Dkt. 1-1 at 11.]  The Government responds that, as with his other arguments, Mr. Poupart has failed to offer anything more than the aforementioned conclusory statement in support of his claim.

Mr. Poupart has not described what consequences of sentencing his counsel misrepresented.  To the extent he is referencing his argument from his motion to withdraw that Attorney Gagne failed to fully advise him of his right to appeal, the Court finds no evidence in the record which warrants a conclusion different from Judge Arterton's.  Even if Attorney Gagne had ineffectively advised him of his appeal rights, no prejudice resulted under *Strickland* because the Court advised him of those rights at his change of plea hearing.  *Poupart*, Dkt. 178 at 16; *see also Rosenfield*, 972 F.2d at 144 (finding that even if counsel had failed to adequately advise defendant of a right, the court remedied any deficiency by advising the defendant of the right at his plea hearing).

To the extent Mr. Poupart is asserting his counsel failed to advise him of the 18 U.S.C. 3553(a) factors, that argument also fails.  At his change of plea hearing, the Court directed Attorney King to summarize the plea agreement, and in doing so she stated:

> The plea agreement also contains a provision with regard to the sentencing guidelines.  The defendant understands that the Court is

> required to consider the sentencing guidelines as well as other factors that are enumerated under Title 18, United States Code Section 3553(a) when it tailors an appropriate sentence in this case, and that the Court is not bound by this agreement.

*Poupart*, Dkt 178 at 19.  Mr. Poupart affirmed under oath that the plea agreement "fully and accurately reflect[ed his] understanding of the agreement that [he] entered into with the Government."  *Id.* at 30.  Further, record evidence indicates his counsel spent several hours discussing the plea agreement with him.  *Poupart*, Dkt. 173-1 (Exhibits A-C to Opposition to Motion to Withdraw Guilty Plea) (records of Attorney Gagne's visit with Mr. Poupart to discuss the plea agreement).  Mr. Poupart asserted no confusion as to the sentencing factors at his change of plea hearing and asserts no basis for confusion in his current motion.  [Dkt. 1-1 at 11.]  His assertion that "counsel misrepresented sentencing factors" is conclusory, and contradicts his sworn statements without supporting evidence.  Mr. Poupart's fifth ineffective assistance of counsel claim must be DENIED.  *See Vasquez,* 1997 WL 148812 at *12 (allegations which are "vague, conclusory, and unsupported by citation to the record, any affidavit, or any other source" cannot establish an ineffective assistance of counsel claim).

## VI. Failure to Argue for a Lower Sentence

Finally, Mr. Poupart asserts that, at sentencing, his counsel should have argued for the instant sentence to run concurrently with his one-year sentence for two state misdemeanor charges involving sexual misconduct with a minor. [Dkt. 1-1 at 12.]  Mr. Poupart asserts a concurrent sentence would have been appropriate under U.S.S.G. 5G1.3.  The Government responds that U.S.S.G. is inapplicable in this case.

Sentencing Guideline Section 5G1.3 applies where the defendant is "subject to an undischarged term of imprisonment or anticipated state term of imprisonment." U.S.S.G § 5G1.3(a)-(d) . Mr. Poupart falls into neither category; he had already fully discharged his term of imprisonment on the two state misdemeanor charges when he was sentenced in this case. *Poupart*, Dkt. 177 (Presentence Investigation Report) at ¶ 50. Nor does Mr. Poupart assert he faced any anticipated state term of imprisonment which should have run concurrently with this sentence under Section 5G1.3.

In addition, although Mr. Poupart does not raise the argument here, the Court notes that Mr. Poupart's state misdemeanor convictions are not relevant conduct under U.S.S.G. 5K2.23. Section 5K2.23 allows a downward departure in light of a discharged terms of imprisonment, but only if the discharged term of imprisonment resulted from another offense that is relevant to the instant offense of conviction. Conduct is relevant if it "occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense; . . . [was] part of the same course of conduct or common scheme or plan as the offense of conviction;" or involves "harm that resulted from the acts and omissions specified in [the two subsections just described], [or] harm that was the object of such acts and omissions." U.S.S.G. 1B1.3(a)(1) - (a)(3).

Mr. Poupart's Connecticut state misdemeanor offenses were sexual assaults which occurred in 2006 and 2007. *Poupart*, Dkt. 177 at ¶ 50. The offense at issue here is possession of child pornography. *Id*. at ¶¶ 15-22. The only

similarity between the two offenses is that two of the over 100 images and videos of child pornography found on Mr. Poupart's computer are photos of one of the minor victims of the 2006 and 2007 sexual assaults. *Id.* at ¶¶ 15-22. Those images were made in 2003 and 2004, at least three years prior to the sexual assaults. *Id.* at ¶¶ 15-22. That similarity does not render the sexual assaults relevant to the instant possession of child pornography offense under U.S.S.G. 1B1.3(a)(1) - (a)(3). A comparison with cases in which the Second Circuit has found relevant conduct confirms that the conduct at issue here is insufficient under Section 1B1.3.

In *United States v. Broxmeyer*, 699 F.3d 265, 282-83 (2d Cir. 2012), the defendant attempted to induce a minor victim to take sexually explicit photos of herself and send them to him, resulting in the minor victim sending a sexually suggestive photo of herself in her underwear. Defendant then continued to "cajole and badger" the minor victim for an explicit photo of herself, resulting in the minor victim sending a sexually explicit image of herself to the defendant. *Id.* The Second Circuit found the initial attempt was relevant to the eventual successful inducement because the successful inducement was the object of the initial attempt. *Id.* There is no evidence here that the sexual assaults in 2006 and 2007 were the end-goal of a course of conduct beginning with the explicit images taken in 2003 and 2004, or that the two distinct crimes were otherwise part of the same course of conduct.

In addition, in *United States v. Ahders*, 622 F.3d 115, 120 (2d Cir. 2010), the Second Circuit found the uncharged molestation of two minors relevant to the

defendant's conviction for child pornography production because it occurred during the period that the defendant was producing pornographic images. Unlike *Ahders*, the images of the minor victim from 2003 and 2004 were not made contemporaneously with the 2006 and 2007 sexual assaults.

Mr. Poupart has not shown why his counsel was ineffective for failing to raise a non-meritorious argument at sentencing. His final argument for ineffective assistance of counsel must also be DENIED.

<u>Conclusion</u>

There is no need for this Court to conduct a hearing on this habeas petition. Although courts generally "look with disfavor on summary rejection of a habeas petition," *United States v. Aiello*, 900 F.2d 528, 534 (2d Cir.1990) (quotation omitted), the text of § 2255 provides that the Court need not conduct a hearing where "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b) (2014); *see also Aiello*, 900 F.2d at 534 (finding no reversible error in the failure to conduct a hearing where the petition omitted "meritorious allegations that can be established by competent evidence"). Mr. Poupart is not entitled to relief on his claims. Therefore, this Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 is DENIED. The Court denies a certificate of appealability because jurists of reason would not find this procedural ruling debatable. *See Slack v. McDaniel*, 529 U.S. 473, 478 (2000). The Court CERTIFIES under 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith.

**IT IS SO ORDERED.**

_____/s/_____

**Hon. Vanessa L. Bryant**
**United States District Judge**

**Dated at Hartford, Connecticut: February 22, 2018**